ELMA LINNEKOGEL, petitioner-appellant,

v.

GEORGE W. LINNEKOGEL, defendant-respondent.

[Decided October 11th, 1923.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Bentley, who delivered the following opinion orally:

"This is a petition for an absolute divorce on the ground of constructive desertion.

"The parties were married on the 23d day of April, 1912, and immediately commenced to live in Jersey City, at the home of the wife. The petition states that almost from the beginning of their married life the defendant practiced a course of cruelty and abusive treatment toward her, and then sets out in detail the acts of extreme cruelty which she says drove her from her husband and justified her in remaining away from him for the statutory period. There has been an abundance of proof of the marriage and of the residence, required under our act, leaving only the subject of the husband's conduct against his wife to be considered.

"The petitioner charges that he has been guilty of habitual, or almost habitual drunkenness; that he has used profane language to her, and indulged in a systematic course of conduct to keep her awake in the nighttime. She says, and in this she is corroborated, that he would go to bed at an early hour in the evening while she would still be engaged until a much later hour with her household duties, and then having refreshed himself with some slumber would quarrel with her continuously from the time that she would go to bed until late hours, sometimes extending beyond the dawn. She also says that at times the defendant would come home so drunk that he would fall out of bed and it would be

necessary to secure the services of her son to put him back into bed, and has described his threats of suicide in the pond upon their place in Ramsey as another sample of his ingenuity in this respect.

"In my opinion, the love that this woman had for this man was killed almost immediately after the marriage ceremony. She has testified, and I confidently believe it to be true, that they quarreled because he wanted her to continue to keep boarders instead of taking her support and the support of her infant children upon his shoulders, as he should have done. At that time he was not maimed, nor had he lost any of his faculties. From that time on, as I said before, I believe that the petitioner lost all love for this man, with the consequence that a most pitiful condition of affairs existed in the household.

"The children of the petitioner's former marriage have shown, by their attitude on the stand even more than by the testimony that they have given, their undying and consuming hatred for the defendant. It seems to me that the defendant is a difficult man to live with or get along with. He is opinionated and obstinate; seems to be very confident of his own opinions, as shown on the stand in using words, time after time, the meaning of which I do not believe he even knows and which did not fit in with the context of the sentence. He has apparently never exerted himself as a man should to support his wife, but has permitted her to go out and toil almost like a laborer to make money.

"I might say, in passing, that there were a great many 'blind alleys' opened up in the trial of the issues in this case which I am not going to regard at all, such as the testimony as to the relationship between Mrs. Linnekogel and some man named Beach. I do not believe there is a scintilla of truth in that insinuation, or that that is the reason why she wishes to rid herself of this man.

"But my difficulty is in having the proofs come under the language of the statute. In this state the only authority in the court of chancery to try divorce suits arises out of the

Divorce act, and if a case is not brought within the language under which it is commenced there is no ground for a divorce. Extreme cruelty does not mean constant quarreling and bickering. Extreme cruelty has been defined by Vice-Chancellor Van Fleet, in *Black* v. *Black, 30 N. J. Eq. 228,* in language which has been commented upon time and time again and approved in several cases such as *Smith* v. *Smith, 40 N. J. Eq. 566,* and the very recent case of *Doty* v. *Doty, 92 N. J. Eq. 660.* But in all of these cases there has been a condition of affairs within the family far worse than appears in the case at bar. Mr. Justice Kalisch, speaking for the court of errors and appeals in the *Doty Case* says, that the petitioner was driven away by her husband's persistent abuse, consisting of his coming home frequently intoxicated; that he called his wife vile names, and, it might be said in passing in this case, that the worst language that has been described by any of the witnesses is that Mr. Linnekogel has told his wife to go to hell. In the *Doty Case* the defendant charged his wife with infidelity to the marriage bed, the most grievous insult that can be put upon a woman; that he introduced dissolute men and women in his home and caroused with them until one or two o'clock in the morning, in which carousals much indecent and profane language was used and, as a consequence of such behavior, she was unable to obtain proper rest and sleep at night, and this repeated conduct on his part resulted in undermining her health. It even appears in the *Doty Case* that the defendant had added to his misdoings by taking up improperly the companionship of another woman.

"And so in the case of *Close* v. *Close,* where the most vile and opprobrious epithets were leveled at the wife, where there were charges made against her honor, openly and publicly, or else in other cases there had been such violence, physical and actual, as to cause an apprehension that the continuation of the marriage state would result in the wife being permanently and severely injured or killed.

"But we have none of these things in the case at bar. There is no violence proved here. One or two witnesses did

speak of the defendant having once lightly struck the petitioner in the chest, but that was not followed up. Counsel does not seriously urge that there is any physical violence in this case, and I feel that, painful and unpleasant as life with this man must have been, under the policy of our law that is the chance this woman took when she married him. If marriages are to be broken up because parties cannot get along together, then it can only be done by this court after the legislature adopts a statute similar to those of some of the western states and makes incompatibility of temperament a ground for divorce.

"In this case, while I believe that all the allegations in the petition has been proved I feel that they do not constitute grounds for a divorce; yet I will advise the decree without prejudice, so that if this man continues to disturb and bother his wife and adds to what he has done in the past other acts to make her unhappy, there will be added and accumulated to those the facts that have already been proved in this case, after having been warned by the court that it is his duty, that the law requires him as the stronger member of the union, to perform his part of the marriage contract and to see that a home is provided for his wife where the conditions will be happy and where his self-confessed disagreeableness of character will not make it intolerable for her to live with him. I will advise a decree dismissing the petition in this case, but without prejudice to the filing of another petition.

"As I have said to counsel, and as I think this conclusion already shows, my determination that there should not be a decree of divorce is based upon the single ground that, uncomfortable and unpleasant as the life of the petitioner has been made by the defendant, I do not consider that his acts of unkindness amount to that degree of cruelty or conform to the standard expressed in the cases of our state as constitute the foundation for a decree of divorce *a mensa et thoro* for extreme cruelty."

*Mr. Louis Ogust,* for the appellant.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion delivered by Vice-Chancellor Bentley in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, BERGEN, BLACK, KATZENBACH, WHITE, ACKERSON, VAN BUSKIRK—9.

*For reversal*—MINTURN, KALISCH, HEPPENHEIMER—3.